Cite as 2020 Ark. 86

# SUPREME COURT OF ARKANSAS

No. CR-18-700

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** February 20, 2020 |
| STACEY EUGENE JOHNSON | APPELLANT | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67CR-93-54] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE CHARLES A. YEARGAN, JUDGE |
| | | PETITION FOR REHEARING DENIED. |

**SHAWN A. WOMACK, Associate Justice**

Stacey Johnson seeks rehearing of our decision affirming the circuit court's denial of his petition for postconviction DNA testing under Act 1780. *See Johnson v. State*, 2019 Ark. 391. Because Johnson's petition for rehearing fails to comport with the requirements set forth in Arkansas Supreme Court Rule 2-3(g), we must deny his petition.

A petition for rehearing is limited to calling attention to specific errors of law or fact within the original opinion. *See* Ark. Sup. Ct. R. 2-3(g) (2018). A petition should not merely repeat arguments already considered by this court. *Id.* Nor should it include new arguments not presented in the original briefing. *Id.* Indeed, any repetitive or newly raised arguments within the petition will simply not be considered. *See MacKool v. State*, 2012 Ark. 341, at 2 (per curiam). This is true even when the newly raised arguments are of constitutional dimension. *See, e.g., McArty v. Hobbs*, 2012 Ark. 306, at 2 (per curiam).

The issues on appeal were limited to Johnson's satisfaction of the statutory predicates for scientific testing under Act 1780 and the admissibility of proffered testimony regarding the reliability of eyewitness identifications. *See Johnson*, 2019 Ark. 391, at 8. We affirmed the circuit court's conclusion that the proposed testing could not raise a reasonable probability that Johnson did not murder Carol Heath. *Id.* at 14. Johnson's failure to meet this statutory requirement under Act 1780 precluded testing as a matter of law. *Id.* at 9. We also held that the proffered eyewitness identification testimony exceeded the scope of our mandate and was procedurally barred from consideration. *Id.* at 15.

To support his petition for rehearing, Johnson reiterates the exact arguments that were considered and rejected on appeal. And, for the first time in this case, Johnson contends that his claims implicate a right to due process and access to the courts under the United States Constitution. The entirety of his petition thus falls outside of the scope of rehearing under Rule 2-3(g). *See MacKool*, 2012 Ark. 341, at 2. We will not consider the merits of his repetitive claims or his novel constitutional arguments that were raised for the first time in this petition. Our original opinion stands.

Petition for rehearing denied.

HART and WYNNE, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** Johnson's petition for rehearing is valid and meritorious. Petitions for rehearing are proper to call attention to errors of fact and errors of law, and as Johnson's petition points out, the majority's original opinion contains many of both. Furthermore, I object to the majority's insinuation that Johnson's

2

petition for rehearing contains a new argument raised "for the first time in this case," namely that "his claims implicate a right to due process and access to the courts under the United States Constitution." Maj. Op. at 2. The majority, aiming to justify a procedural bar, makes it sound as if Johnson is impermissibly presenting an entirely new and separate argument for the first time in his petition for rehearing. This representation is incorrect, misapprehends the nature of Johnson's petition for rehearing, and perpetuates the very constitutional violations of which Johnson complains.

Johnson initiated this litigation by filing in the circuit court his motion for postconviction scientific testing. The requirements for such motions are set out in Ark. Code Ann. §§ 16-112-201 et seq., and nowhere in that statutory framework is there a requirement that the movant allege or otherwise demonstrate that a refusal to allow testing would violate the movant's constitutional rights. In other words, a constitutional violation was never part of Johnson's burden of proof under the statute, and there was nothing to implicate such considerations when Johnson's motion was filed. However, after the State filed a response opposing Johnson's motion for testing, Johnson filed a reply making clear that to bar him from accessing the testing procedures would violate his constitutional rights. Under a heading labeled "A FAILURE TO GRANT DNA TESTING ... WOULD BE A FLAGRANT AND IRREVERSIBLE VIOLATION OF MR. JOHNSON'S RIGHT TO DUE PROCESS," Johnson's reply apprised the circuit court as follows:

> Preventing Mr. Johnson from having the opportunity to conduct DNA testing on the requested items and prove his innocence claims violates the very notion of "fundamental fairness" and denies him due process. As the

3

State of Arkansas has created a clear statutory procedure through which convicted persons can obtain DNA testing and then utilize exculpatory results from that testing to prove their innocence, the processes employed by the State for obtaining access to DNA must remain fundamentally fair. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

...

Mr. Johnson can only access these forms of relief—which in this case would not only exonerate him, but save his life—if this court grants his request to test the requested items of evidence.

Obviously, this aspect of Johnson's argument is "responsive" to a potential outcome—*if* Johnson's efforts to demonstrate his innocence here were denied by simply refusing to allow him access to the testing procedures, that *would be* fundamentally unfair and violate Johnson's constitutional rights. The circuit court was inescapably apprised of this issue when it later held that Johnson had failed to satisfy the statutory prerequisites for testing.

The same was true of this court when it issued its majority opinion affirming the circuit court's denial of Johnson's motion. In the jurisdictional statement of his opening brief on appeal, Johnson provided as follows:

The appeal involves questions of substantial public interest: the statutory right to DNA testing where the results could prove Appellant's actual innocence and critically undermine the legitimacy of the conviction and resulting death sentence imposed by the State of Arkansas. Further, should DNA testing reveal Appellant's actual innocence, Appellant's 5th and 14th Amendment rights, and rights under article 2, sections 3 and 8 of the Arkansas Constitution, would have been compromised.

In other words, while the focus of the litigation thus far has been upon whether Johnson satisfied the prerequisites to obtain testing set out in Ark. Code Ann. §§ 16-112-201 et. seq.—obviously because that is the statutory vehicle through which Johnson must pursue

4

this relief—the constitutional implications of denying Johnson's request have always been known.

Regardless of whether the majority realizes it, Johnson's petition for rehearing complains of a constitutional violation that occurred at the appellate level, i.e., *this court*. By refusing to engage in a reasonable application of law and by refusing to acknowledge the obvious significance of material evidence, this court violated Johnson's constitutional rights to due process and access to the courts.

I dissent. **ROBIN F. WYNNE, Justice, dissenting.** I would grant Johnson's petition for rehearing. As set out in my dissenting opinion, the proposed testing could significantly advance his claim of innocence. *See Johnson v. State*, 2019 Ark. 391, ___ S.W.3d ___ (Wynne, J., dissenting).